# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| LEXOS MEDIA IP, LLC, | § |
| | § |
| v. | § Case No. 2:16-CV-00747-JRG-RSP (Lead) |
| | § |
| APMEX, INC., | § |

## EARLY CLAIM CONSTRUCTION OPINION AND ORDER

Lexos Media IP, LLC ("Lexos") filed a series of now-consolidated patent infringement actions against defendants who maintain online retail websites. The amended complaints accuse the defendants of infringing two United States Patents, U.S. Patent No. 5,995,102, and U.S. Patent No. 6,118,449. The patents generally relate to server systems and methods for modifying a cursor image on a website. On motion from Defendants, the Court concluded that early claim construction would assist the parties in narrowing or potentially resolving their dispute. An early claim construction hearing was held on March 15, 2017. The Court now enters the following claim construction order.

## BACKGROUND

The '449 patent is a continuation of the '102 patent, and the two patents share the same specification. The patents' backgrounds primarily discuss existing limitations with advertising on websites, including small and sometimes unnoticeable banner ads, and pop-up ads that can be easily avoided, or worse, ignored. *See, e.g.*, '102 patent at 1:10-2:26. The patents therefore describe a need for "a simple means to deliver advertising elements, i.e., logos, animations, sound, impressions, text, etc., without annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored." *Id.* at 2:27-33.

1

The patents describe numerous examples in which cursor images are modified to an image that represents some or all of the subject matter being displayed on the website. In one "Fizzy Cola" embodiment, for example, a generic cursor image takes "the appearance of a 'Fizzy Cola' bottle when a 'Fizzy Cola' banner advertisement appears among the display data of a popular search engine's site." *Id.* at 17:5-9. This example is similar to one of Lexos' commercial embodiments:



*See* Dkt. No. 79 at 3.

The claims include recitations of this and similar applications, although all claims are not limited to advertising. Representative claim 70 of the '102 patent recites (in relevant part):

> A server system for modifying a cursor image to a ***specific image*** having a desired shape and appearance displayed on a display of a remote user's terminal, said system comprising:
>
> cursor image data corresponding to said specific image;
>
> cursor display code, said cursor display code operably to modify said cursor image; and
>
> a first server computer for transmitting specified content information to said remote user terminal, . . . , said cursor display instruction and said cursor display code operable to cause said user

> terminal to display a ***modified cursor image*** on said user's display in the shape and appearance of said specific image, . . . , ***said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal***, . . . .

'102 patent at 23:15-46 (emphasis to relevant language added).

\* \* \*

Shortly after the Court held a scheduling conference, Defendants Musician's Friend, Inc., Guitar Center Inc., and Costco Wholesale Corporation moved for early claim construction. *See* Dkt. No. 60. These defendants alleged a pattern by Lexos of serially filing groups of cases and then settling those cases before claim construction. According to the defendants, Lexos' infringement theory is implausible because the patent claims cannot possibly cover the accused websites, e.g., websites in which a cursor disappears and is replaced by a magnifying glass icon when the user hovers the cursor over an image that can be magnified:



*See* Dkt. No. 79 at 4 (citing Defendant Musician's Friend accused website).

The Court granted the defendants' motion, reasoning that early claim construction would aid in the speedy resolution of this and future cases involving the '102 and '449 patents. *See* Dkt. No. 70 at 1-2 (citing Fed. R. Civ. P. 1). The Court thereafter stayed all further deadlines in the case and scheduled an early claim construction hearing for March 15, 2017. Dkt. No. 77. On March 6, 2017, Lexos and Defendants Musician's Friend and Guitar Center filed a joint motion to dismiss. Costco and one other defendant, Saks Incorporated, remained for the early claim construction hearing.

## DISCUSSION

Claim construction begins with the language of the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). When interpreting claim language, courts consult the intrinsic record, which includes the specification and prosecution history. *Phillips*, 415 F.3d at 1315-17. The specification is "the single best guide to the meaning of a disputed term." *Id.* at 1315 (citation omitted).

### A. The Parties' Proposed Constructions

After the early claim construction briefing, the parties resolved their dispute concerning the phrase "modifying a cursor image" and "modified cursor image." The parties agree that these phrases should mean "changing or replacing the form, shape or appearance of a cursor image." *See* Dkt. No. 83-1. Two additional phrases remain in dispute—"specific image" and "content corresponding to at least a portion of said information to be displayed."

#### 1. "specific image"

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| "the cursor image displayed on the remote user's terminal after it has been modified" | "an image selected based on the subject matter displayed, not an individual user interface state or the current state of the user interface" |

4

Lexos contends that its proposal is consistent with the language of the claims because the claims repeatedly recite that the "cursor image" is modified into the "specific image," and thus the specific image must be the image that is displayed on the user's screen after the cursor image is modified. *See* Dkt. No. 79 at 9-10. Such claim language, according to Lexos, is consistent with the remainder of the specification's description of the term "specific image." *Id.*

There are two problems with Lexos' construction. First, Lexos' construction includes the phrase "cursor image." The "specific image" is not the "cursor image" because the phrase "cursor image" appears elsewhere in the claims, and there is a "general presumption that different terms have different meanings." *See Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012). While the specification uses "cursor image" and "specific image" interchangeably, the claims that issued use both phrases to refer to different images. "[T]he language of the claim frames and ultimately resolves all issues of claim interpretation." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). In sum, the "cursor image" recited in the claims is the image that appears before the cursor image is modified into the specific image. Lexos' construction fails to properly account for this distinction.

Second, Lexos' construction ignores the word "specific." Neither party cites a dictionary definition of "specific," but the common meaning of "specific" indicates that something has particular characteristics. Lexos' construction of "specific image" effectively means nothing more than a "modified" cursor image. Such a construction is inconsistent with the specification. Aside from the claims' use of the word "specific," the claims clarify that the "specific image" includes "content corresponding to at least a portion of said information to be displayed" on the screen. This additional limitation relates the *content displayed within* the "specific image" to the content being displayed on the screen. A few examples of the "specific image" include "rendering the

5

cursor as a baseball bat (on a site with sports information), a pink but otherwise standard-shaped pointer (on a site about the Pink Panther), a witch-on-a-stick to celebrate Halloween, the Statue of Liberty to celebrate Fourth of July, etc." '102 patent at 17:32-40.

Defendants' construction attempts to account for the word "specific" using two limitations. First, the "specific image," according to Defendants, is an "image including content dependent on the subject matter being displayed." Second, and to make that distinction clear, Defendants propose that two negative limitations be included in the construction—"not connected with individual user interface states" and "not connected with the current state of the user interface."

According to Defendants, inclusion of the phrase "content dependent on the subject matter being displayed" is based both on the specification and the prosecution history. During prosecution, for example, the Examiner rejected the pending claims under 35 U.S.C. § 103(a) as obvious over U.S. Patent 5,710,897 to Schneider. Dkt. No. 80-1 at 35. Schneider relates to a computer operating system manager for selecting and customizing pointer images that represent different events or mouse commands that a user can implement. Scheider at 5:55-65-6:1. In a "standard window," for example, a "normal arrow pointer" is displayed. *Id.* at 5:57-58. When the mouse moves over text, the "text" pointer is displayed. *Id.* at 6:10-11. One example of a folder of different pointer images for different events is shown in Figure 3 of Schneider:



Fig. 3

The patent applicant distinguished Schneider in part because although Schneider discloses a cursor image that can change into a particular pointer image, the pointer image, according to the applicant, is not modified to an image that is related to content information being displayed on the screen. *See* Dkt. 80-1 at 35-36. The applicant stressed this point, arguing that the pointer images of Schneider are "not related to any specific content being displayed on the device," that "Schneider completely lacks even of a hint of the desirability of associating a cursor image with specific content information," and that "cursor images in Schneider are changed when the mouse pointer moves over any window *regardless of what is being displayed within that window.*" *Id.* at 36; *see also* Dkt. No. 80-2 at 15-17.

Defendants contend that the proposed negative limitations "emphasize that the 'specific image' is selected based on the subject matter displayed." *E.g.*, Dkt. No. 80 at 6. As support for these limitations, Defendants highlight language in the description discussing prior art in which "pointers change shape to reflect an internal state of the computer or present function within an application." *Id.* (quoting '102 patent at 3:44-48). Defendants also point to remarks made by the applicant in which prior art, including Schneider, was distinguished because the pointer images of Schneider correspond to "user interface states." *Id.* (quoting Dkt. No. 80-2 at 15-17).

While Defendants' proposed construction is more consistent with the intrinsic record than Lexos', it is unnecessary to include Defendants' negative limitations. The patent applicant distinguished Schneider using the language Defendants propose, but the first clause in Defendants' construction conveys that the "specific image" itself includes "content dependent on the subject matter being displayed." Typically, only the words of the claims, an express disclaimer, or lexicography justifies adding a negative limitation. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003). The patent applicant's remarks are less like an outright disclaimer and more like language distinguishing the meaning of "specific image" from the pointer images described in Schneider. It is clear from the intrinsic record that "specific image" does not simply consist of content that is independent of the subject or topic displayed on the screen, such as a user-interface state.

The phrase "content dependent on the subject matter displayed" is nevertheless similar to a later phrase in the claims, "content corresponding to at least a portion of said information to be displayed." This similarity, or redundancy as Lexos characterizes it, is a reason not to include the phrase in the construction at all. *See* Dkt. No. 79 at 11 ("To the extent that Defendants' proposed construction of the term 'specific image' is intended to encompass this separate limitation, it is

unnecessary and unfaithful to the actual words of the separate limitation already included in the claim language."). In sum, neither Lexos' nor Defendants' proposed construction of "specific image" appears to include understandable language that would assist the trier of fact in placing the claims into context.

2. "content corresponding to at least a portion of said information to be displayed"

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| "information linked and related to at least a portion of the content being transmitted to and displayed on the remote user's computer or terminal" | "content that has a relationship to the subject matter being displayed, and not corresponding to a system operation or user interface state representing a unique system operation" |

The parties' dispute concerning the "content" phrase largely mirrors the "specific image" dispute. Although the parties do not clearly dispute the meaning of the word "content" itself, Lexos' construction switches the word "information" with "content," relative to the order in the claim language. "Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999). The Court therefore declines to switch or otherwise equate the word "content" with the word "information."

Defendants again propose negative limitations to clarify that the content displayed in the specific image is related to at least a portion of the subject matter being displayed. But the proposed negative limitations are unnecessary—in the absence of an express disclaimer, independent lexicography, or another compelling reason to include them. *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003).

**B. The Court's Construction**

The Court concludes that the construction of a single claim limitation, although slightly different than the parties' proposal, would best resolve the claim construction dispute:

> said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal

The dispute, as Lexos readily admits, is about whether the "specific image" recited in the claims can include content—such as a magnification icon or a plus sign—that is "linked and related to" information on a website because the generic cursor image morphs into the magnification icon when the cursor image hovers over or near that information. The "information" could be a variety of images, such as a guitar in the case of (former) Defendant Musician's Friend, or a PlayStation™ controller in the case of Defendant Costco.



*See* Dkt. No. 79 at 4 (citing Defendant Musician's Friend accused website).

Lexos' proposed "linked and related to" phrase appears to derive support from two instances in the description in which "sound and animation" is "linked and related to the content being transmitted to and displayed on the client computer or terminal." '102 patent at 3:60-64; 4:10-12. While this portion of the description raises the question of whether the word "content" is referring to "sound or animation" in the claims, that issue is not disputed. Nevertheless, the "linked

and related to" phrase proposed by Lexos, or at least how Lexos interprets that phrase, means something different than "corresponding to"—as that phrase is used in the claims and informed by the remainder of the specification and prosecution history.

The problem with Lexos' argument is that it assumes that the words of a claim can be construed in a complete vacuum, divorced from the remainder of the intrinsic record. "[T]he correct construction" is always the construction that "stays true to the claim language *and most naturally aligns with the patent's description of the invention.*" *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1238 (Fed. Cir. 2014) (citation omitted) (emphasis added). Lexos' construction does not align with the patent's description or the remainder of the intrinsic record.

There is nothing in the patent's description or prosecution history suggesting that "corresponding," or "linked and related to" for that matter, can imply merely a functional or positional relationship between the "specific image" and the information being displayed on the screen. Contrary to Lexos' position, when the patents explain that a "generic cursor" can "change appearance . . . in a way that is linked and related to the content, such as a web page, which is being transmitted to and displayed on the client computer," *see* '102 patent at 3:60-64, this means that the cursor image itself—the content or visual characteristics of the cursor image—will morph into something that represents at least a portion of the underlying web page content. The very next sentence of the description provides an example: "[t]he cursor or pointer may appear as a corporate or a brand logo which relates to advertising content within the web page being transmitted and displayed." *Id.* at 3:64-67.

A magnification icon, by contrast, may appear when the user hovers over content that prompts it to appear, and in that sense is "linked and related to" to the content. But there is nothing about the content of the magnification icon that prompts the user to associate the content being

11

displayed within the magnification icon with the information being displayed on the website. If a user were to see the magnification icon off by itself, in other words, the user would not think, "guitar!"



The same could not be said of every example in the description—the baseball bat on a sports site, a pink-colored pointer on a Pink Panther site, a "witch-on-a-stick" on a Halloween site—all the examples associate the shape or appearance of the "specific image" with information on the underlying website. '102 patent at 17:32-40. In addition, the patent applicant expressly distinguished pointer images having a shape or appearance associated with a control function, e.g., a double-headed arrow for changing the size of a display window. *See* Dkt. 80-1 at 35-36.

To be clear, the Court is not limiting the claims to embodiments described in the description, even though every embodiment points to a single conclusion. Rather, the Court is simply confronted with a choice between two ordinary meanings of the word "corresponding." One, as Lexos contends, simply means associated at least positionally or functionally with information on the website. The other, as Defendants contend, means similar in terms of content. This choice often presents itself when construing claim terms that can have more than one plain and ordinary meaning. *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016), *cert. denied sub nom. EON Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 137 S. Ct. 640 (2017). Confronted with such a choice, courts must adopt the construction that "most naturally aligns with the patent's description of the invention." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1238 (Fed. Cir. 2014) (citation omitted) (emphasis added).

With this understanding in mind, the Court construes the phrase "said specific image including content corresponding to at least a portion of said information to be displayed on said

display of said user's terminal" to mean **"an image representative of at least a portion of the subject or topic being displayed on the screen."**

This construction finds ample support in the patents' description. The patent characterizes the "specific image" as "representing" data displayed on the user's screen. For example, "the cursor can be modified for advertising purposes to *represent* Fizzy Cola's logo, its corporate mascot, images of its products or services, slogans, icons . . . , etc." '102 patent at 17:5-15 (emphasis added). While the word "representative" appears sparingly in the patents, the patents' use of this word is simply synonymous with the intended meaning of "linked and related to" and "corresponding to." Among these descriptive phrases, however, "representative" best captures the description of the invention and most closely aligns with the intrinsic record. Although there is little difference between "representative" and Defendants' proposed phrase, "dependent on," the Court believes that "representative" would be more helpful to the trier of fact.

## CONCLUSION

Having resolved the parties' early claim construction dispute, IT IS ORDERED that the stay in this case be lifted and that the parties file any necessary amended docket control order within fourteen days of this Order.

**SIGNED this 16th day of March, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE